UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-110 (DWF)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JEANA LAUTIGAR,

    Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and defendant Jeana Lautigar agree to resolve this case on the following terms and conditions. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency. The United States is represented by Robert M. Lewis, Assistant U.S. Attorney. The defendant is represented by Craig E. Cascarano, Esq.

1.    **Charges.** The defendant agrees to plead guilty to Counts 1 and 2 of the Information, charging her with engaging in a monetary transaction in criminally derived property in violation of 18 U.S.C. § 1957 and filing a false income tax return in violation of 26 U.S.C. § 7206(1). The defendant is pleading guilty because she is guilty of these charges.

2.    **Factual Basis.** Between at least 2016 and 2020, Jeana Lautigar ("Lautigar" or "the defendant"), a resident of Minnesota, owned and operated an accounting and payroll service headquartered in Saint Louis Park, Minnesota. Part of the business involved managing client payroll accounts, with Lautigar responsible for ensuring that her clients'

employees were paid their wages at the appropriate times. This part of the business went by the name Edina Business Solutions, Inc. During the relevant time period, Lautigar operated Edina Business Solutions using the same Employer Identification Number as her accounting firm, Jeana Lautigar CPA, Inc. In her federal income tax filings, Lautigar elected to treat her business as an S-Corporation, meaning all corporate income, losses, deductions, and credits were passed to her, the business owner, for federal tax purposes.

To facilitate the payroll service she provided to her clients, Lautigar was granted access to client bank accounts. On multiple occasions between 2016 and 2020, Lautigar embezzled funds from her clients' bank accounts and used the money for unapproved purposes, including personal expenses. The aggregate sum of embezzled funds was at least $344,813. Typically, Lautigar would conduct an internet electronic transfer to move a sum from a client account into an account she controlled, in an amount appearing to be consistent with the clients' payroll, and then spend the money for an unapproved purpose.

On or about or about February 6, 2020, in the State and District of Minnesota, the defendant,

**JEANA LAUTIGAR,**

did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, namely, Lautigar transferred $19,458.29 from an account she controlled at Franzen Bank and Trust, which funds were proceeds of a specified unlawful activity, namely wire fraud, into an account of another payroll client, all in violation of Title 18, United States Code, Section 1957.

Lautigar failed to report the embezzled income on her federal income tax returns for the years in which she engaged in the scheme. The tax loss to the United States from the concealment of this income was approximately $84,746.

On or about August 10, 2018, in the State and District of Minnesota, the defendant,

**JEANA LAUTIGAR,**

a resident of Edina, Minnesota, did knowingly and willfully make and subscribe a federal Form 1040 individual income tax return for the year 2017, which was verified by a written declaration that it was made under the penalties of perjury and filed with the Internal Revenue Service, and which the defendant did not believe to be true and correct as to every material matter, that is, she reported on said return that her total income was $234,926, whereas, as she then and there knew, the correct figure was at least $326,259, all in violation of Title 26, United States Code, Section 7206(1).

In addition to willfully underpaying her federal income taxes for tax year 2017 by falsely reporting income as charged in Count 2 of the Information, the defendant further admits that she willfully signed and submitted a false income tax returns for tax years 2016, 2018, 2019, and 2020 similarly omitting income from the fraud scheme. The defendant agrees that the total federal criminal tax loss attributable to this conduct is $84,746, as set forth in the following table:

| Year | 2016 | 2017 | 2018 | 2019 | 2020 | TOTAL |
|---|---|---|---|---|---|---|
| Tax loss | $17,842 | $32,536 | $20,124 | $1,998 | $12,246 | $84,746 |

3.  **Waiver of Indictment.** The defendant agrees to waive indictment by a grand jury on the charges and consents to the filing of a criminal information. The defendant

further agrees to execute a written waiver of the defendant's right to be indicted by a grand jury on these offenses.

4.   **Waiver of Pretrial Motions.**  The defendant understands that she has certain rights to file pre-trial motions in this case.  As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file pre-trial motions in this case.

5.   **Statutory Penalties**.  The parties agree that Count 1 of the Information carries the following statutory penalties:

   a.   a maximum of 10 years' imprisonment;
   b.   a maximum supervised release term of 3 years;
   c.   a fine of up to $250,000 or up to twice the value of the funds involved in the monetary transaction;
   d.   a mandatory special assessment of $100; and
   e.   assessment to the defendant of the costs of prosecution (as defined in 28 U.S.C. §§ 1918(b) and 1920).

The parties agree that Count 2 of the Information carries the following statutory penalties:

   a.   a maximum of 3 years' imprisonment;
   b.   a maximum supervised release term of 1 year;
   c.   a fine of up to $250,000;
   d.   a mandatory special assessment of $100; and
   e.   assessment to the defendant of the costs of prosecution (as defined in 28 U.S.C. §§ 1918(b) and 1920).

6.   **Revocation of Supervised Release**.  The Defendant understands that if the Defendant were to violate any supervised release condition while on supervised release, the Court could revoke the Defendant's supervised release, and the Defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in

18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The Defendant also understands that as part of any revocation, the Court may include a requirement that the Defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

    7.    **Guideline Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, et seq. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and that the Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing. The parties accordingly stipulate to the following advisory guideline calculations:

    a.    Offense Level. The parties agree that the total offense level before reduction for acceptance of responsibility is 24. This is based on the following:

        i.    The offense level for Count 1 before reduction for acceptance of responsibility is 24, based on a base offense level of 7, U.S.S.G. § 2B1.1(a)(1), a 12-level increase for the loss between $250,000 and $550,000, U.S.S.G. § 2B1.1(b)(1)(G), an increase of two levels because there were more than 10 victims, U.S.S.G. § 2B1.1(b)(2)(A), a one level increase for money laundering pursuant to U.S.S.G. § 2S1.1(b)(2)(A), and two levels for abuse of a position of trust, U.S.S.G. §§ 3B1.3.

        ii.    The offense level for Count 2 before reduction for acceptance of responsibility is 16, with the base offense level 14 because the tax loss is between $40,000 and $100,000 and the defendant received more than $10,000 in income from criminal activity in any year. (U.S.S.G. §§ 2T1.1(a)(1), 2T1.1(b)(1), and 2T4.1(F)).

        iii.    The combined offense level is 24. U.S.S.G. §§ 3D1.1, 3D1.2.

5

b.  Acceptance of Responsibility. The parties agree that the defendant should receive a two-level reduction for acceptance of responsibility. The government further agrees to move the Court for an additional one-level reduction if: (i) the defendant testifies truthfully during the change of plea and sentencing hearings, (ii) the defendant provides complete and truthful information to the Probation Office in the pre-sentence investigation, and (iii) the defendant commits no further acts inconsistent with acceptance of responsibility. (U.S.S.G. §3E1.1). With the **3 level** downward adjustment for acceptance of responsibility, the **total offense level would be 21.**

c.  Criminal History Category. Based on information available at this time, the parties believe that the defendant's criminal history category is **I**. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. Defendant's actual criminal history and related status (which might impact the defendant's adjusted offense level) will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.

d.  The parties believe the defendant may qualify for a further reduction in offense level pursuant to U.S.S.G. § 4C1.1. This reduction will apply if the Court finds that the defendant meets all of the following criteria: (1) the defendant did not receive any criminal history points from Chapter Four, Part A; (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism); (3) the defendant did not use violence or credible threats of violence in connection with the offense; (4) the offense did not result in death or serious bodily injury; (5) the instant offense of conviction is not a sex offense; (6) the defendant did not personally cause substantial financial hardship; (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights); (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848. If the additional **2 level** downward adjustment applies, the **total offense level will be 19.**

d.  Guideline Range. If the total adjusted offense level is 19 and the criminal history category is I, the advisory Sentencing Guidelines

6

range is **30 to 37 months**. If the total adjusted offense level is 21 and the criminal history category is I, the advisory Sentencing Guidelines range is **37 to 46 months**.

e. Fine Range. If the adjusted offense level is 19, the fine range is $10,000 to $100,000. If the adjusted offense level is 21, the fine range is $15,000 to $150,000. (U.S.S.G. § 5E1.2(c)(3)).

f. Supervised Release. The Sentencing Guidelines require a term of supervised release of at least two years. (U.S.S.G. § 5D1.2).

g. Sentencing Recommendation and Departures. The parties reserve the right to make a motion for departure or variance from the applicable Guidelines range and to oppose any such motion made by the opposing party. The parties reserve the right to argue for any sentence available under the law, including a sentence outside the applicable advisory Guidelines range.

8. **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory, and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9. **Special Assessment.** There is a special assessment in the amount of $200.00 for each felony count of conviction. The defendant agrees to pay the special assessment prior to sentencing.

10. **Restitution and Disclosure of Assets.** The defendant understands that the Court will order her pursuant to 18 U.S.C. §§ 3556 and 3663A to make restitution of at least $344,813 to the victims of Count 1 including all relevant conduct.

Pursuant to 18 U.S.C. § 3663(a)(3), the defendant further agrees that the Court should order her to pay criminal restitution to the Internal Revenue Service in the total amount of $84,746 for the conduct described in Count 2 including all relevant conduct. The defendant understands that the IRS will use the restitution order as the basis for a civil assessment and she does not have the right to challenge this assessment. *See* 26 U.S.C. § 6201(a)(4). Neither the existence of a restitution payment schedule, nor timely payment of restitution according to that schedule, will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint, under 26 U.S.C. § 6331. The parties agree pursuant to 18 U.S.C. § 3664(i) that restitution to victims other than the Internal Revenue Service shall have priority over payment of restitution to the Internal Revenue Service.

The defendant agrees that restitution shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The defendant agrees to cooperate with the IRS and the State of Minnesota in the assessment and payment of any current outstanding tax liability. The defendant agrees that neither this agreement nor anything relating to the criminal

proceedings limits in any way the ability of the IRS to seek to collect any amounts owed by the defendant, including potential additional taxes due and owing and applicable interest and penalties, nor do these proceedings limit the IRS's lawful examination, determination, assessment, or collection of any taxes, penalties or interest from the defendant.

The defendant represents that she will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest which shall include all assets held in defendant's own name or in the name of another including those held by spouse, nominee or other third party, in any property, real or personal. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, forfeiture and fines ordered by the Court. The defendant agrees to complete a financial statement fully and truthfully within 30 days after the entry of this Plea Agreement. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets. The defendant agrees that, at the discretion of the U.S. Attorney's Office, the defendant will submit to one or more interviews or depositions under oath regarding financial issues prior to sentencing.

11.     **Forfeiture**.  The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in, or any property traceable to, the funds transferred in violation of 18 U.S.C. § 1957, as described in Count 1 of the Information. The defendant consents to entry of a money judgment forfeiture in the amount of $19,458.29.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds.

12.   **Waivers of Appeal and Collateral Attack.**  Defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the high end of the Guidelines range of imprisonment as determined at sentencing. Defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. Defendant has discussed these rights with her attorney. Defendant understands the rights being waived, and defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the United States may appeal the substantive reasonableness of a term of imprisonment below the low end of the Guidelines range of imprisonment as determined at sentencing.

13.   **FOIA Requests.**  Defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

14. **Complete Agreement.** The Defendant acknowledges that she has read this plea agreement and has carefully reviewed each provision with her attorney. The Defendant further acknowledges that she understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement is the entire agreement and understanding between the United States and the Defendant.

ANDREW M. LUGER
United States Attorney

Date: 9/27/2024

BY: ROBERT M. LEWIS
Assistant U.S. Attorney

Date:

JEANA LAUTIGAR
Defendant

Date: 9/27/2024

CRAIG E. CASCARANO
Counsel for Defendant

11